IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RICHARD STOECKLIN and PINDAI STOECKLIN,<br><br>   Plaintiffs,<br><br>   v.<br><br>CITY OF CHICAGO and UNNAMED CHICAGO POLICE OFFICERS,<br><br>   Defendants. | Case No. FILED: JUNE 5, 2008<br>         08 CV 3243     JH<br><br>Judge  JUDGE PALLMEYER<br>       MAGISTRATE JUDGE VALDEZ<br><br>Jury Demand |

## COMPLAINT

Plaintiffs, RICHARD STOECKLIN and PINDAI STOECKLIN, by their attorney, KURT H. FEUER, complaining of Defendants, CITY OF CHICAGO and UNNAMED CHICAGO POLICE OFFICERS (collectively, "Defendant Officers"), state as follows:

### Introduction

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution. Plaintiffs also bring several related state law claims.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all of the parties reside in this judicial district, and the events giving rise to the claims

asserted herein all occurred within this district.

## Background

4. Richard Stoecklin and Pindai Stoecklin reside at 4847 W. Ainslie Street, Apartment 2, Chicago, Illinois. The apartment building is a wood frame two flat in a residential neighborhood.

5. The building bears clear indicia that it is an apartment building, not a single family home, including multiple mail boxes on the front exterior of the building, one of which is marked "Stoecklin Apt. 2", and an exterior front stairway that leads to the front door of the Stoecklin's apartment on the second floor.

6. On January 31, 2008 at approximately 9:10 p.m., the Stoecklin's had just sat down to eat their dinner when they heard a loud boom at their front door and the sound of the glass from the window of the door shattering and showering inside their apartment.

7. Fearing a home invasion, the Stoecklins began to flee towards the rear door of their apartment.

8. Approximately eight to ten Chicago Police officers with guns drawn came rushing into the apartment, and when the Stoecklins saw that they were police they stopped fleeing.

9. The police officers did not knock on the Stoecklin's front door or announce themselves before breaking the door in and storming the apartment.

10. The officers were shouting and ordered the Stoecklins down on the floor, but Mrs. Stoecklin was approximately eight months pregnant at the time and could not comply. Mrs. Stoecklin had begun to hyperventilate out of fear and police shouted at her to stop moving.

11. Mr. Stoecklin got down on his knees and immediately told the police that his wife could not comply because she was pregnant.

12. Mr. Stoecklin also told the police that they had the wrong guy but a Sergeant who appeared to be leading the raid told him that the police had the right guy and Mr. Stoecklin was handcuffed and frisked.

13. The Sergeant, an Asian-American appearing male, and another officer, an African-American male, took Mr. Stoecklin into a bedroom and told him they had a warrant but did not produce a warrant or tell him what the warrant was for. The Sergeant told Mr. Stoecklin that the police had him on tape buying heroin from a Cambodian named "Em."

14. Stoecklin told the Sergeant that was impossible because he had done no such thing but the Sergeant insisted that police had Stoecklin on tape buying selling or buying drugs, and

told Stoecklin that he had better tell him what he wanted to know or he would take Mrs. Stoecklin to jail as well.

15. When Mr. Stoecklin continued to deny any involvement with drugs the Sergeant left the bedroom.

16. This Sergeant then went up to Mrs. Stoecklin and began shouting at her inches from her face in an intimidating manner, ordering her to tell him when her husband started doing drugs. When she begged the Sergeant not to take her husband away, he stated that he was not the one who married him.

17. During this time the police were searching the apartment, going through drawers and throwing items on the floor.

18. Plaintiffs landlord was doing work on the furnace in the attic at the rear of the building and came down to the second floor after hearing the commotion.

19. Police told the landlord that they were looking for a Cambodian named "Em," and the landlord informed them that this individual lived in the first floor apartment.

20. The Sergeant returned to the bedroom where Mr. Stoecklin was being detained and told the African-American officer, "We fucked up."

21. Despite this, police made the Stoecklin's fill out information cards and the Sergeant continued to make statements in the presence of the landlord that if there were any more

problems with the Stoecklins they would be evicted from their apartment.

22. When Mr. Stoecklin argued that they had done nothing wrong, the Sergeant threatened to arrest him if he kept arguing.

23. A few minutes after the police left Mrs. Stoecklin fainted and collapsed to the floor. Mr. Stoecklin called 911 and paramedics came to the apartment.

24. While the paramedics were at the apartment one of the officers returned and walked unannounced back in to inquire about why the paramedics were there.

25. Mrs. Stoecklin declined to be taken to the hospital.

26. The landlord nailed a board up over the Stoecklin's front door, but the apartment was very cold and the Stoecklin's slept in the back of the apartment with sheets over the door. Several of their tropical fish were dead the next day.

27. Mr. Stoecklin stayed home from work the next day until the front door could be fixed so that it could be securely locked.

28. Both Plaintiffs were extremely upset by this incident and Mrs. Stoecklin still has nightmares about it and is fearful in her own apartment.

## Count I -- Section 1983

### Fourth Amendment
### (Unlawful Search)

29. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

30. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Chicago Police Officers, improperly and unreasonably exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating the United States Constitution.

31. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

32. As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including, but not limited to, mental distress and anguish.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant Officers, as well as punitive damages against the Defendant Officers in their individual capacities, and to award Plaintiffs their reasonable attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

## Count II -- State Law

### Illinois Constitution
### (Unlawful Search)

33. Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully herein.

34. As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Chicago Police Officers, improperly exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating Illinois law and the Illinois Constitution.

35. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

36. As a proximate result of this misconduct, Plaintiffs suffered damages, including, but not limited to, mental distress and anguish.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant Officers, as well as punitive damages against the Defendant Officers in their individual capacities, and to award Plaintiffs their reasonable attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### COUNT III -- State Law Claim
### Respondeat Superior

37. Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully herein.

38. In committing the acts alleged in the preceding paragraphs, Defendant Officers were agents of the City of Chicago, and were acting at all relevant times within the scope of their employment.

39. Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant the CITY OF CHICAGO, to award Plaintiffs their attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### COUNT IV -- State Law Claim
### Indemnification

40. Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully herein.

41. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

42. Defendant Officers, who all are or were employees

of the City of Chicago, acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE Plaintiffs respectfully request this Court to enter judgment for monetary damages against Defendant the CITY OF CHICAGO, to award Plaintiff his attorneys' fees and costs, and for any other such relief as this Court deems appropriate.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

_____
Attorney for Plaintiff

Kurt H. Feuer
Attorney at Law
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900