**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD STOECKLIN and | ) | |
| PINDAI STOECKLIN, | ) | **No.    08 C 3243** |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | JUDGE PALLMEYER |
| | ) | |
| v. | ) | Magistrate Judge Valdez |
| | ) | |
| CITY OF CHICAGO and EDDIE M. | ) | |
| YOSHIMURA, Star No. 2334, | ) | **JURY DEMAND** |
| | ) | |
| Defendant(s). | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER, DEFENSES AND
JURY DEMAND TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant, City of Chicago, ("City") by Mara S. Georges, Corporation Counsel for the City

of Chicago for its Answer, Defenses, and Jury Demand to Plaintiff's Amended Complaint, states as

follows:

**Introduction**

1.      This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation
under color of law of Plaintiffs' rights as secured by the United States Constitution.  Plaintiffs also
bring several related state law claims.

ANSWER:    The City admits the allegations contained in this paragraph but denies any

wrongdoing to the extent this paragraph alleges wrongdoing on the part of the City.

**Jurisdiction and Venue**

2.      This Court has jurisdiction of the action pursuant to 32 U.S.C. § 1983.

ANSWER:    The City admits the allegations contained in this paragraph.

3.      Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegation that all parties reside in this judicial district, but admits the remaining

allegations would be true if all parties reside in this judicial district.

**Background**

4.      Richard Stoecklin and Pindai Stoecklin reside at 4847 W. Ainslie Street, Apartment 2, Chicago, Illinois.  The apartment building is a wood frame two flat in a residential neighborhood.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

5.      The building bears clear indicia that it is an apartment building, not a single family home, including multiple mail boxes on the front exterior of the building, one of which is marked "Stoecklin Apt. 2", and an exterior front stairway that leads to the front door of the Stoecklin's apartment on the send floor.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

6.      On January 31, 2008 at approximately 9:10 p.m., the Stoecklin's had just sat down to eat their dinner when they heard a loud boom at their front door and the sound of glass from the window of the door shattering and showering inside their apartment.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

7.      Fearing a home invasion, the Stoecklins began to flee towards the rear door of their apartment.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

8.      Approximately eight to ten Chicago Police officers with guns drawn came rushing into the apartment, and when the Stoecklins saw that they were police they stopped fleeing.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

9.      The police officers did not knock on the Stoecklin's front door or announce themselves before breaking the door in and storming the apartment.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

10.     The officers were shouting and ordering the Stoecklins down on the floor, but Mrs. Stoecklin was approximately eight months pregnant at the time ane could not comply.  Mrs. Stoecklin had begun to hyperventilate out of fear and police shouted at her to stop moving.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

11.     Mr. Stoecklin got down on his knees and immediately told the police that his wife could not comply because she was pregnant.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

12.    Mr. Stoecklin also told the police that they had the wrong guy but a Sergeant who appeared to be leading the raid told him that the police had the right guy and Mr. Stoecklin was handcuffed and frisked.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

13.    An Asian-American appearing male Sergeant, who upon information and belief is Defendant Eddie M. Yoshimura, and another officer, an African-American male, took Mr. Stoecklin into a bedroom and told him they had a warrant but did not produce a warrant or tell him what the warrant was for.  Sergeant Yoshimura told Mr. Stoecklin that the police had him on tape buying heroin from a Cambodian named "Em."

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

14.    Stoecklin told Sergeant Yoshimura that was impossible because he had done no such thing but the Sergeant insisted that police had Stoecklin on tape buying selling or buying drugs, and told Stoecklin that he had better tell him what he wanted to know or he would take Mrs. Stoecklin to jail as well.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

15.    When Mr. Stoecklin continued to deny any involvement with drugs Sergeant Yoshimura left the bedroom.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

16.    Sergeant Yoshimura then went up to Mrs. Stoecklin and began shouting at her inches from her face in an intimidating manner, ordering her to tell him when her husband started doing drugs.  When she begged the Sergeant not to take her husband away, he stated that he was not the one who married him.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

17.    During this time the police officers were searching the apartment, going through drawers and throwing items on the floor.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

18.    Plaintiffs landlord was doing work on the furnace in the attic at the rear of the building and came down to the second floor after hearing the commotion.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

19.    Police told the landlord that they were looking for a Cambodian named "Em," and the landlord informed them that this individual lived in the first floor apartment.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

20.    Sergeant Yoshimura  returned to the bedroom where Mr. Stoecklin was being detained and told the African-American officer, "We fucked up."

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

21.     Despite this, police made the Stoecklin's fill out information cards and the Sergeant continued to make statements in the presence of the landlord that if there were any more problems with the Stoecklins they would be evicted from their apartment.

ANSWER:     The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

22.     When Mr. Stoecklin argued that they had done nothing wrong, the Sergeant threatened to arrest him if he kept arguing.

ANSWER:     The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

23.     A few minutes after the police left, Mrs. Stoecklin fainted and collapsed to the floor. Mr. Stoecklin called 911 and paramedics came to the apartment.

ANSWER:     The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

24.     While the paramedics were at the apartment one of the officers returned and walked unannounced back in to inquire about why the paramedics were there.

ANSWER:     The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

25.     Mrs. Stoecklin declined to be taken to the hospital.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

26.    The landlord nailed a board up over the Stoecklin's front door, but the apartment was very cold and the Stoecklin's slept in the back of the apartment with sheets over the door. Several of their tropical fish were dead the next day.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

27.    Mr. Stoecklin stayed home from work the next day until the front door could be fixed so that it could be securely locked.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

28.    Both Plaintiffs were extremely upset by this incident and Mrs. Stoecklin still has nightmares about it and is fearful in her own apartment.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

## COUNT I

### Section 1983 - Fourth Amendment
### Unlawful Search

29.    Each of the foregoing Paragraphs is incorporated as if restated fully herein.

ANSWER:    The City re-states its answers to each of the foregoing paragraphs as if fully restated

herein.

30.    As described more fully above, the Defendant Officers, acting under color of law and within the scope of their employment as Chicago Police Officers, improperly and unreasonable exceeded the scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs' residence, thereby violating the United States Constitution.

ANSWER:    The City lacks sufficient knowledge or information to form a belief as to the truth of

the allegations contained in this paragraph.

31.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs.

ANSWER:    The City denies the allegations contained in this paragraph to the extent they are

directed at the City.  The City lacks sufficient knowledge or information to form a

belief as to the truth of the remaining allegations contained in this paragraph.

32.    As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including, but not limited to, mental distress and anguish.

ANSWER:    The City denies the allegations contained in this paragraph to the extent they are

directed at the City.  The City lacks sufficient knowledge or information to form a

belief as to the truth of the remaining allegations contained in this paragraph.

WHEREFORE, the City prays that this Court enter judgment in its favor on Plaintiff's

Complaint, award the City costs and fees as allowed by law, and grant such further relief as this

Court deems just and proper.

## COUNT II

### State Law Claim - Illinois Constitution
### <u>Unlawful Search</u>

33.     Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully
herein.

ANSWER:     The City restates its answers to Paragraphs 1 through 28 as if fully restated herein.

34.     As described more fully above, the Defendant Officers, acting under color of law
and within the scope of their employment as Chicago Police Officers, improperly exceeded the
scope of their lawful authority in conducting an unlawful and unreasonable search of Plaintiffs'
residence, thereby violating Illinois law and the Illinois Constitution.

ANSWER:     The City lacks sufficient knowledge or information to form a belief as to the truth

of the allegations contained in this paragraph.

35.     The misconduct described in this Count was undertaken with malice, willfulness,
and reckless indifference to the rights of others.

ANSWER:     The City denies the allegations contained in this paragraph to the extent they are

directed at the City.  The City lacks sufficient knowledge or information to form a

belief as to the truth of the remaining allegations contained in this paragraph.

36.     As a proximate result of this misconduct, Plaintiffs suffered damages, including,

but not limited to, mental distress and anguish.

ANSWER:    The City denies the allegations contained in this paragraph to the extent they are

directed at the City.  The City lacks sufficient knowledge or information to form a

belief as to the truth of the remaining allegations contained in this paragraph.


WHEREFORE, the City prays that this Court enter judgment in its favor on Plaintiff's

Complaint, award the City costs and fees as allowed by law, and grant such further relief as this

Court deems just and proper.


## COUNT III

### State Law Claim
### Respondeat Superior

37.    Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully
herein.

ANSWER:    The City restates its answers to Paragraphs 1 through 28 as if fully restated herein.


38.    In committing the acts alleged in the preceding paragraphs, Defendant Yoshimura
and the other Officers were agents of the City of Chicago, and were acting at all relevant times
within the scope of their employment.

ANSWER:    The City lacks sufficient knowledge or information to admit or deny the

allegations contained within this paragraph.


39.    Defendant City of Chicago is liable as principal for all torts committed by its
agents.

ANSWER:    The City states that Plaintiffs' allegation regarding the City's liability is a vague,

inaccurate, and/or incomplete statement, and therefore, this allegations is denied.

WHEREFORE, the City prays that this Court enter judgment in its favor on Plaintiff's

Complaint, award the City costs and fees as allowed by law, and grant such further relief as this

Court deems just and proper.

## COUNT IV

### State Law Claim
### Indemnification

40.    Each of the foregoing Paragraphs 1 through 28 is incorporated as if restated fully
herein.

ANSWER:    The City restates its answers to Paragraphs 1 through 28 as if fully restated herein.

41.    Illinois law provides that public entities are directed to pay any tort judgment for
any compensatory damages for which employees are liable within the scope of their employment
activities.

ANSWER:    The City states that Plaintiffs' allegation regarding the City's liability is a vague,

inaccurate, and/or incomplete statement, and therefore, this allegations is denied.

42.    Defendant Yoshimura and the other Officers, who all are or were employees of
the City of Chicago, acted within the scope of their employment in committing the misconduct
described herein.

ANSWER:    The City admits Defendant Yoshimura was and is an employee of the City of

Chicago.  The City lacks sufficient knowledge or information to admit or deny the

remaining allegations contained within this paragraph.

WHEREFORE, the City prays that this Court enter judgment in its favor on Plaintiff's

Complaint, award the City costs and fees as allowed by law, and grant such further relief as this

Court deems just and proper.


**AFFIRMATIVE DEFENSES**

1.       Under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of

the state law claims alleged because a public employee is not liable for his or her acts or

omissions in the execution or enforcement of any law, unless such acts or omissions constitute

willful and wanton conduct.  745 ILCS 10/2-202.

2.       A municipality is not liable under a theory of respondeat superior for the

constitutional violations of its employees.  See Board of County Commissioners of Bryan

County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997).

3.       Under the Illinois Tort Immunity Act, a public employee serving in a position

involving the determination of policy or exercise of discretion is not liable for an injury resulting

from his act or omission in determining policy when action in the exercise of such discretion

even though abused.  745 ILCS 10/2-201.

4.       Under the Illinois Tort Immunity Act, a public employee is not liable for injury

caused by his instituting or prosecuting any judicial or administrative proceeding within the

scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-

208.

5.       Defendant Officers are not liable for any of Plaintiff's claims because they can not

be held liable for acts or omissions of other people.  Under the Tort Immunity Act, Defendant

Officers are not liable for any of Plaintiff's alleged state law claims because a public employee,

as such and acting within the scope of his/her employment, is not liable for an injury caused by the act or omission of another person.  745 ILCS 10/2-204.

6.      Plaintiffs have a duty to mitigate their damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

7.      To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by any wrongful conduct on the part of the Plaintiff, any verdict or judgment obtained by Plaintiff based on any finding of "reckless" willful and wanton behavior, as opposed to "intentional" willful and wanton behavior, must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case.  See People of City of Rolling Meadows, 167 Ill.2d 41, 656 N.E.2d 768, 212 Ill. Dec. 171 (1995).

8.      If the Defendant Officers are found not liable to the Plaintiff on any of his state claims,  the City is not liable to the Plaintiff.  745 ILCS 10/2-109.


**JURY DEMAND**

The City  respectfully requests a trial by jury.


Respectfully submitted,

MARA S. GEORGES,
CORPORATION COUNSEL
CITY OF CHICAGO

By:    /s/ Rita Moran
       RITA MORAN
       Assistant Corporation Counsel

13

30 N. LaSalle St., Suite 1020
Chicago, Illinois 60602
(312) 744-4939 Ofc.
(312) 744-3989 Fax
Attorney No.  06270301